FARRIS, Circuit Judge:
First American Title Insurance Co. and Provident Federal Savings Bank appeal from the district court’s grant of a motion to dismiss for failure to state a claim. We reverse and remand.
BACKGROUND
This appeal concerns the status of various liens on real property located in Grand Terrace, California. Mark A. Moss acquired the property in July 1983. He mistakenly recorded the deed under the name Mark H. Moss. In October 1983, Moss gave Provident a deed of trust in the property in order to secure payment of a $156,-000 promissory note. Provident recorded the deed on October 19, 1983. In January 1984, Moss corrected the name on the original deed, but failed to notify Provident of the change.
In November 1985 and January 1986, the Internal Revenue Service recorded tax liens against all of Moss’s property, including the Grand Terrace property. The liens on the Grand Terrace property were junior to Provident’s lien. On March 10,1986, Provident initiated foreclosure proceedings against the property and conducted a title search under the name Mark H. Moss. Provident never discovered the federal tax liens because they were recorded under the name Mark A. Moss. Provident consequently failed to notify the IRS of the upcoming nonjudicial sale. At the sale, Provident purchased the property for $159,-444.
Provident’s failure to notify the IRS of the sale meant that the property remained subject to the federal tax liens. See 26 U.S.C. § 7425(b)(1). When Provident later discovered the federal liens, it received indemnity from First American Title Insurance Co. Both entities then instituted this action. They conceded that Provident’s failure to notify the IRS meant that the sale was “made subject to and without disturbing” the tax liens. They argued, however, that equitable principles would have allowed Provident, and now First American, to retain the senior lien on the property. The district court disagreed. It held that Provident’s senior lien was extinguished when Provident purchased the property, leaving the property subject only to the federal tax liens.[1]
STANDARD OF REVIEW
We review de novo the district court’s grant of a motion to dismiss for failure to state a claim upon which relief can be granted. Fort Vancouver Plywood Co. v. United States, 747 F.2d 547, 552 (9th Cir.1984). Dismissal was proper only if Provident and First American could not have proven any set of facts that would have entitled them to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).
DISCUSSION
The issue on appeal is whether Provident and First American could have proven any set of facts which would have entitled Provident to retain its pre-sale status as senior lienor over the government. Our resolution of the issue involves two steps. First, we must determine the nature of Provident’s property interest after the sale. Second, if Provident’s lien survived the sale, we must determine whether the lien has priority over the tax liens. See Aquilino v. United States, 363 U.S. 509, 512-14, *971 80 S.Ct. 1277, 1279-80, 4 L.Ed.2d 1365 (1960). Each step is analytically distinct. If our resolution of the property issue reveals that Provident’s lien did not survive the sale, then we need not reach the priority issue because there would be no lien competing for priority with the tax liens. If Provident’s lien survived the sale, however, then, and only then, would we reach the priority issue.
Federal law governs the resolution of each issue. United States v. Brosnan, 363 U.S. 237, 240, 80 S.Ct. 1108, 1110, 4 L.Ed.2d 1192 (1960). If federal statutes do not address the issue, the Supreme Court has specified the source of federal law. We adopt state law as the federal common law when deciding to what extent an individual has an interest in property to which a federal tax lien has attached. Id. at 240-42, 80 S.Ct. at 1110-11; Aquilino, 363 U.S. at 512-13, 80 S.Ct. at 1279-80; see also United States v. Polk, 822 F.2d 871, 874 (9th Cir.1987). We generate uniform nationwide federal rules, however, when deciding priority issues. Brosnan, 363 U.S. at 240, 80 S.Ct. at 1110.
A. The Property Issue
Whether Provident’s lien survived the sale requires us to determine the extent of Provident’s interest in the Grand Terrace property after the sale. We adopt California law as the federal common law to make this determination. See Aquilino, 363 U.S. at 512-13, 80 S.Ct. at 1279-80; Brosnan, 363 U.S. at 240-42, 80 S.Ct. at 1110-11; Polk, 822 F.2d at 874. Under California law, the general rule is that a mortgagee’s lien is extinguished when the mortgagee purchases the property to which his or her lien was attached. Cal.Civ.Code § 2910 (West 1974); Cornelison v. Kornbluth, 15 Cal.3d 590, 125 Cal.Rptr. 557, 568, 542 P.2d 981 (1975); Strike v. Trans-West Discount Corp., 92 Cal.App.3d 735, 155 Cal.Rptr. 132, 137 (1979). The theory is that the mortgagee’s lesser interest (the lien) has “merged” into the greater interest (the fee). If the merger rule applies to Provident, then Provident’s lien did not survive the sale and the tax liens are the only encumbrances on the property.
We are not convinced, however, that the merger rule necessarily applies to Provident. California law recognizes an equitable exception to the rule:
Equity will prevent or permit a merger as will best subserve the purposes of justice and the actual and just intent of the parties.... In the absence of an expression of intention, if the interest of the person in whom the several estates have united, as shown from all the circumstances, would be best subserved by keeping them separate, the intent to do so will ordinarily be implied.
Ito v. Schiller, 213 Cal. 632, 3 P.2d 1, 2 (1931) (quoting Jameson v. Hayward, 106 Cal. 682, 39 P. 1078 (1895)).
If Provident and First American are entitled to equitable relief, then Provident’s lien survived the sale. Before we consider this issue, however, we first address the government’s contention that equitable relief is simply unavailable to a senior lienor such as Provident who has failed to notify the IRS of a nonjudicial sale.
1. Does existing case law foreclose the availability of equitable relief?
On the basis of Southern Bank v. I.R.S., 770 F.2d 1001 (11th Cir.1985), cert. denied sub nom. Mid-State Homes, Inc. v. United States, 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 977 (1986), the district court concluded that equitable relief was unavailable to Provident and First American. In Southern Bank, two senior lienors conducted nonjudicial foreclosure sales without notifying the IRS. Each lienor purchased the property at the respective sales. The Eleventh Circuit held that the senior liens were extinguished, leaving the properly subject only to the government’s liens. Id. at 1009.
In reaching this decision, the court applied Alabama’s rule of merger. Id. at 1007. When the lienors contended that elevating the government’s junior liens would be inequitable, they did not argue that Alabama law would allow an equitable exception to the merger rule. Instead, after the court determined that the liens did not sur *972 vive the sale, the lienors apparently argued that Alabama law would provide equitable relief on the priority issue. The court disagreed, stating “we cannot permit states to nullify the effectiveness of the federal tax lien ... by applying various equitable principles recognized by the state.” Id. at 1009.
We agree with the Eleventh Circuit that, as to priority issues, state equitable principles do not apply. If a federal statute does not address a priority issue, courts generate a federal rule to decide the issue. Brosnan, 363 U.S. at 240, 80 S.Ct. at 1110. In the case before us, however, we deal with a property issue because we must determine whether Provident’s lien survived the sale. Aquilino v. United States, 363 U.S. 509, 512-14, 80 S.Ct. 1277, 1279-80, 4 L.Ed.2d 1365 (1960), and United States v. Brosnan, 363 U.S. 237, 240-42, 80 S.Ct. 1108, 1110-11, 4 L.Ed.2d 1192 (1960), both specify that courts look to state law to determine the extent of an individual’s property interest in cases involving the federal tax liens. Aquilino makes clear that the property issue is analytically distinct from the priority issue. 363 U.S. at 512-14, 80 S.Ct. at 1279-80. Because Southern Bank dealt with a priority issue, the case does not apply here.
We reject the government’s contention that United States v. Polk, 822 F.2d 871 (9th Cir.1987), precludes the availability of equitable relief on the merger issue. In Polk, the senior lienors conducted a foreclosure sale without notifying the IRS. Id. at 872. The court held that, under Arizona law, the senior liens were extinguished regardless of the senior lienors’ intent. Id. at 874 (quoting Best Fertilizers of Arizona, Inc. v. Burns, 116 Ariz. 492, 493, 570 P.2d 179, 180 (1977)). Polk deals with Arizona, law and has no bearing on whether equitable relief is available under California law. The senior lienor’s intent is irrelevant under Arizona law, but not under California law. See Ito v. Schiller, 213 Cal. 632, 3 P.2d 1, 2 (1931); Strike v. Trans-West Discount Corp., 92 Cal. App.3d 735, 155 Cal.Rptr. 132, 137-38 (1979). Polk therefore does not preclude the availability of equitable relief.
2. Does 26 U.S.C. § 7425(b)(1) preclude the availability of equitable relief?
The government contends that granting equitable relief to Provident would be inconsistent with § 7425(b)(1). We disagree. Before Congress enacted § 7425(b)(1), some state laws allowed senior lienors to conduct nonjudicial sales without notice to junior lienors. Junior liens held by the government could be extinguished by operation of state law even though the government had not been notified of a sale. S.Rep. No. 1708, 89th Cong., 2d Sess., reprinted in 1966 U.S. Code Cong. & Admin. News 3722, 3748. To prevent the extinction of government liens under these circumstances, Congress enacted section 7425(b)(1) to assure that the government received notice of these sales so that it could “review its position and determine the appropriate action....” Id. This would assure that the government could protect its interest in having a fair sale. In the event the government did not receive notice, Congress intended only to shield the government’s junior liens from extinction so the government could protect its interests at a later date.
Granting equitable relief to Provident would not undermine Congress’s intent. If Provident’s lien survives the sale, the government’s junior liens still are unaffected by the sale, and the government can protect its interest in having a fair sale in the future when Provident sells the property or when the government forecloses on it. Granting equitable relief also will not discourage senior lienors such as Provident from notifying the government of future sales. Senior lienors have a strong incentive to notify the government because doing so will extinguish the government’s junior liens when the property is sold. See 26 U.S.C. § 7425(b)(2) and Sohn v. California Pacific Title Ins. Co., 124 Cal.App.2d 757, 269 P.2d 223, 230 (1954). If notice is not given, the government’s liens survive the sale, leaving an encumbrance on the property. We believe that this is the penalty that Congress intended to impose on *973 senior lienors such as Provident. Granting equitable relief to Provident is not inconsistent with that intention. Section 7425(b)(1) therefore does not preclude the availability of equitable relief.
3. Availability of equitable relief under California law
As we understand California law, equitable relief is available to Provident and First American if three conditions are met: (1) Provident’s best interests would be best served by preventing a merger of the lien and the fee; (2) the purposes of justice would be served; and (3) the government cannot prove by a preponderance of the evidence that Provident actually intended to merge the lien into the fee. Ito v. Schiller, 213 Cal. 632, 3 P.2d 1, 2 (1931) (quoting Jameson v. Hayward, 106 Cal. 682, 39 P. 1078 (1895)); see also Strike v. Trans-West Discount Corp., 92 Cal.App.3d 735, 155 Cal.Rptr. 132, 137-38 (1979). We need not discuss the first condition, because there is no dispute that Provident’s best interests would be served by preventing a merger.
a. Purposes of justice
To determine whether justice would be served by allowing Provident’s lien to survive the sale, we consider how our resolution of the issue would affect the parties. We presume that Provident did not act in bad faith when it failed to discover the government’s liens. If we do not grant equitable relief, Provident would lose $159,-444 (the amount Provident paid for the property) because the property would be subject to tax liens totalling $534,000. The government, on the other hand, would realize $159,444 which it otherwise would not have received had Provident notified it of the sale. We recognize that any money received by the government would go towards satisfaction of legitimate tax liens. If Provident had notified the government, however, the government’s junior liens would have been extinguished, see 26 U.S.C. § 7425(b)(2) and Sohn v. California Pacific Title Ins. Co., 124 Cal.App.2d 757, 269 P.2d 223, 230 (1954), and the government would not have received any proceeds from the sale because the sale yielded only enough money to satisfy a portion of Provident’s senior lien, see Caito v. United Calif. Bank, 20 Cal.3d 694, 144 Cal.Rptr. 751, 754, 576 P.2d 466 (1978) (junior lienor draws from proceeds only after foreclosing senior lienor paid off). Under these circumstances, the equities favor Provident, particularly since 26 U.S.C. § 7425(b)(1) eliminates virtually any harm the government suffered when it did not receive notice of the sale.
Because Provident failed to notify the government, section 7425(b)(1) provides that the sale was “made subject to and without disturbing” the government’s liens. Even if Provident’s senior lien survives the sale, the government is virtually in the same position it was in before the sale. If Provident sells the land, or if the government forecloses on it, the proceeds from the sale first go towards satisfaction of Provident’s lien and any remaining proceeds go towards satisfaction of the government’s liens.
We therefore conclude that Provident and First American could prove a set of facts which would show that the purposes of justice would be served if equitable relief were granted.
b. Intent
The final condition for receiving equitable relief involves the question of Provident’s intention on the issue of merger. Because Provident did not express any intention on the merger issue, equity will presume that Provident did not intend to merge its lien with its fee interest if two conditions are met: (1) Provident’s best interests would be served by preventing the merger, and (2) the purposes of justice would be served. Ito v. Schiller, 213 Cal. 632, 3 P.2d 1, 2 (1931); Strike v. Trans-West Discount Corp., 92 Cal.App.3d 735, 155 Cal.Rptr. 132, 137-38 (1979). We have concluded that Provident and First American could prove a set of facts to fulfill these conditions. We have also presumed that Provident intended to prevent a merger of its interests. On remand, the presumption is rebuttable if the government *974 can prove by a preponderance of the evidence that Provident actually intended to merge its interests. See Sheldon v. La Brea Materials, 216 Cal. 686, 15 P.2d 1098, 1101 (1932) (merger rule not applied when no direct or circumstantial evidence of an express intention to merge); see also Strike, 92 Cal.App.3d 735, 155 Cal.Rptr. 132,137 (placing burden of proof on person arguing that merger occurred).
B. The Priority Issue
If the district court ultimately determines that Provident’s lien survived the sale, then the only remaining issue is whether the lien has priority over the tax liens. The Federal Tax Lien squarely addresses this issue and therefore obviates the necessity of relying on the federal common law to resolve the issue. See Manalis Finance Co. v. United States, 611 F.2d 1270, 1273 (9th Cir.1980); AETNA Ins. Co. v. Texas Thermal Industries, Inc., 591 F.2d 1035, 1037-38 (5th Cir.1979) (per curiam). If Provident’s lien survived, the Tax Lien Act gives priority to it because Provident had perfected its lien before the government recorded its tax liens. See 26 U.S.C. §§ 6323(a), (h)(1); Manalis, 611 F.2d at 1273; AETNA Ins. Co., 591 F.2d at 1038.
CONCLUSION
We hold that the district court erred in granting the government’s motion to dismiss. We have viewed the facts in the light most favorable to Provident and First American. Whether they can actually prove their case is a matter for the district court to decide on remand.
Reversed and Remanded.

. The district court also rejected the contention that 26 U.S.C. § 7425 allowed a "taking." We need not address this issue.